IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| CHARLES SMITH, ) | |
| ) | |
| Plaintiff, ) | |
| ) | Case No. 12-cv-09915 |
| v. ) | |
| ) | Robert M. Dow, Jr. |
| NORTH CHICAGO POLICE OFFICER ) | |
| RAYMOND HARTMANN, NORTH ) | |
| CHICAGO POLICE OFFICER ) | |
| WILLIAM BOGDALA, THE CITY OF ) | |
| NORTH CHICAGO, MAYOR LEON ) | |
| ROCKINGHAM, JR., and former NORTH ) | |
| CHICAGO CHIEF OF POLICE ) | |
| MICHAEL NEWSOME, ) | |
| ) | |
| Defendants. ) | |

**MEMORANDUM OPINION AND ORDER**

Before the Court is Defendant Mayor Leon Rockingham, Jr.'s motion to dismiss [44] Plaintiff's second amended complaint ("SAC") [39]. The Court denies Defendant's motion for the reasons set forth below.

**I.  Background[1]**

Plaintiff alleges that Officers Hartmann and William Bogdala violated his constitutional rights by using excessive force against him. More specifically, according to Plaintiff's complaint, on December 12, 2011, the two officers entered Plaintiff's hotel room and arrested him in connection with a burglary investigation. Plaintiff ran toward the hotel stairwell to escape with his

---

[1] The facts are drawn from Plaintiff's SAC. For the purposes of Defendants' motion to dismiss, the Court assumes as true all well-pleaded allegations set forth in the complaint. See *Killingsworth v. HSBC Bank Nevada, N.A.*, 507 F.3d 614, 618 (7th Cir. 2007).

1

hands cuffed behind his back, but Hartmann tackled him, brought him to the ground, and subdued him. "[W]ithout justification," Officer Hartmann then "slammed Plaintiff's face and head into the flooring of the landing in the stairwell," fracturing his orbital socket and causing permanent vision loss as well as brain injuries. SAC at ¶ 19. Throughout the incident, Officer Bogdala "failed to intervene and in fact encouraged [Hartmann's] use of excessive force." *Id.* at ¶ 20.

Plaintiff sues Officer Hartmann for use of excessive force in violation of 42 U.S.C. § 1983; Officer Bogdala for failing to intervene in violation of § 1983; the City of North Chicago for carrying out a policy of police brutality in violation of *Monell v. Dep't. of Soc. Servs.*, 436 U.S. 658 (1978); the two officers and the City of North Chicago for battery, assault and negligence; and, most relevant here, Mayor Rockingham and the Chief of Police for violating § 1983 in their individual and official capacities (Count V).

In Count V of the first amended complaint ("FAC"), Plaintiff alleged that Mayor Rockingham—supervisor of the police department and final policy maker under the City of North Chicago Code of Ordinances—knew about a pattern of police brutality and failed to stop it. Police brutality in North Chicago was so rampant that, according to the FAC, officers filed 88 "use of force forms" reporting injuries of arrestees between approximately 2006 and 2011. One of these complaints allegedly accused Officer Hartmann of "viciously slam[ing] the face of Dennis Carcamo into the ground and the side of his squad car." Plaintiff further alleged that the NAACP lobbied the police department to issue a "Memorandum of Understanding Between the City of North Chicago and Minority Coalition," which outlined nine steps to increase transparency in the complaint process, seven of which Rockingham failed to implement. According to Plaintiff, Mayor Rockingham directed human resources to reveal the names of officers filing confidential complaints regarding the misconduct of fellow officers. He allegedly approved and condoned the police force's use of excessive force by "[c]ontinually allowing" it; "[r]efusing to take corrective

actions"; "[a]ctively concealing police misconduct"; and "[d]eterring individual officers from reporting misconduct." FAC at ¶ 83. Mayor Rockingham additionally "established a practice" of allowing excessive force and "fostered a climate" that facilitated physical abuse of arrestees. *Id.* at ¶¶ 86, 88. This policy "directly caused" Plaintiff's constitutional injury at the hands of Officers Hartmann and Bogdala. *Id.* at ¶ 18.

The Court dismissed Count V of the FAC as to Mayor Rockingham for failure to state a claim under Federal Rule of Civil Procedure Rule 12(b)(6). Specifically, the Court found that the claim against Mayor Rockingham in his individual capacity failed because the allegations failed to allege his personal involvement with Plaintiff's particular injuries.[2] "In order for a supervisor to be liable, they must be 'personally responsible for the deprivation of the constitutional right.'" *Matthews v. City of East St. Louis*, 675 F.3d 703, 708 (7th Cir. 2012) (quoting *Chavez v. Illinois State Police*, 251 F.3d 612, 651 (7th Cir. 2001) (quoting *Gentry v. Duckworth*, 65 F.3d 555, 561 (7th Cir. 1995))). "To show personal involvement, the supervisor must 'know about the conduct and facilitate it, approve it, condone it, or turn a blind eye for fear of what they might see." *Matthews*, 675 F.3d at 708 (quoting *Jones v. City of Chicago*, 856 F.2d 985, 992-93 (7th Cir. 1988)). The FAC failed to allege that Mayor Rockingham knew of Officer Hartmann, let alone his prior face-smashing incident with Dennis Carcamo. Further, Mayor Rockingham's alleged actions were too attenuated from Plaintiff's injury to state a claim for supervisory liability. As for the FAC's allegations that Rockingham "established a practice" and "fostered a climate" of excessive force, the Court found these allegations to be a *Monell* claim dressed up as a claim against the mayor in his individual capacity. The Court accordingly granted Plaintiff 28 days to amend the

---

[2] In dismissing Count V of the FAC, the Court did not expressly address Count V's claim against Mayor Rockingham in his official capacity because it was duplicative of the *Monell* Claim against the City of North Chicago in Count VI. See *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 691 n. 55 (1978) ("official-capacity suits generally represent only another way of pleading an action against an entity of which an officer is an agent"). The Court dismissed the entire count with respect to Mayor Rockingham because the failure of the individual capacity claim, as explained in the opinion, combined with the redundancy of the official capacity claim led the entire count to fail under Rule 12(b)(6).

FAC with additional factual allegations of Mayor Rockingham's personal involvement with Plaintiff's injuries.

Plaintiff subsequently filed the SAC, alleging several new events, all of which occurred prior to Plaintiff's arrest. Most relevant here, Mayor Rockingham allegedly learned that a woman named Sharon Jackson had filed an excessive force complaint, accusing Officer Bogdala of punching her in the face and breaking her eye socket. *Id.* at ¶ 78. Also before Plaintiff's arrest, Assistant Chief of Operations Crystal Phillips allegedly "notified Mayor Rockingham of the excessive and unlawful use of force by the City of North Chicago police officers, including her belief that the behavior of City of North Chicago police officers, including Defendant Officers, was inappropriate and likely to lead to future complaints of excessive and unlawful use of force." *Id.* at ¶ 76. Due to numerous complaints of excessive force, Chief of Police Michael Newsome recommended firing Officer Bogdala, but, upon learning of this recommendation, Mayor Rockingham "recommended and informed Chief of Police Newsome not to fire" him. *Id.* at ¶ 82. In 2008, Officer Bogdala was consequently given a "'last chance' three-year agreement to continue working as a police officer for the City of North Chicago with the knowledge and approval of Mayor Rockingham." Id. at ¶ 83.

Defendants now seek dismissal of Plaintiffs' complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, arguing that the SAC still fails to allege personal involvement and that, alternatively, Mayor Rockingham is entitled to qualified immunity.

## II.     Motion to Dismiss Legal Standard

The purpose of a Rule 12(b)(6) motion to dismiss is not to decide the merits of the case; a Rule 12(b)(6) motion tests the sufficiency of the complaint. *Gibson v. City of Chi.*, 910 F.2d 1510, 1520 (7th Cir. 1990). As previously noted, reviewing a motion to dismiss under Rule 12(b)(6), the Court takes as true all factual allegations in Plaintiffs' complaint and draws all reasonable

inferences in their favor. *Killingsworth*, 507 F.3d at 618. To survive a Rule 12(b)(6) motion to dismiss, the claim first must comply with Rule 8(a) by providing "a short and plain statement of the claim showing that the pleader is entitled to relief" (Fed. R. Civ. P. 8(a)(2)), such that the defendant is given "fair notice of what the * * * claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). Second, the factual allegations in the claim must be sufficient to raise the possibility of relief above the "speculative level," assuming that all of the allegations in the complaint are true. *E.E.O.C. v. Concentra Health Servs., Inc.*, 496 F.3d 773, 776 (7th Cir. 2007) (quoting *Twombly*, 550 U.S. at 555). "A pleading that offers 'labels and conclusions' or a 'formulaic recitation of the elements of a cause of action will not do.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 555). However, "[s]pecific facts are not necessary; the statement need only give the defendant fair notice of what the * * * claim is and the grounds upon which it rests." *Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (citing *Twombly*, 550 U.S. at 555) (ellipsis in original). The Court reads the complaint and assesses its plausibility as a whole. See *Atkins v. City of Chi.*, 631 F.3d 823, 832 (7th Cir. 2011); *cf. Scott v. City of Chi.*, 195 F.3d 950, 952 (7th Cir. 1999) ("Whether a complaint provides notice, however, is determined by looking at the complaint as a whole.").

### III. Analysis

#### A. Personal Involvement

"In order for a supervisor to be liable, they must be personally responsible for the deprivation of the constitutional right." *Matthews*, 675 F.3d at 708 (7th Cir. 2012). Gross negligence is insufficient. Rather, "supervisors must know about the conduct and facilitate it, approve it, condone it, or turn a blind eye for fear of what they might see. They must in other

5

words act either knowingly or with deliberate, reckless indifference." *Jones*, 856 F.2d at 992-93 (citations omitted).

Plaintiff's SAC offers several theories of Mayor Rockingham's liability in his individual capacity.[3] At a minimum, the theory relating to his supervision of Officer Bogdala states a claim under Rule 12(b)(6). The allegations are as follows. Prior to Plaintiff's arrest, Mayor Rockingham learned of two or more incidents when Officer Bogdala used excessive force. He learned of Sharon Jackson's complaint accusing Officer Bogdala of punching her in the face and breaking her eye socket. *Id.* at ¶ 78. He also learned from Assistant Chief of Operations Crystal Phillips that Officer Bogdala had previously used excessive force.[4] Because of this record of misconduct, the Chief of Police recommended firing him. When Mayor Rockingham learned of this recommendation, he intervened, "recommend[ing] and inform[ing] Chief of Police Newsome not to fire" him. *Id.* at ¶ 82 (b). The Chief of Police refrained from firing Officer Bogdala "[a]s a result of Mayor Rockingham's recommendation." *Id.* at ¶ 82(c). Instead, he gave Officer Bogdala a "last chance" three-year employment agreement. During the course of this continued employment, Officer Bogdala allegedly violated Plaintiff's constitutional rights.

The SAC paints a picture that the FAC does not—one that is sufficient to state a claim under Rule 12(b)(6). According to the FAC, Mayor Rockingham facilitated a policy of police brutality; then two officers in the police force happened to use excessive force against Plaintiff. As the Court's prior opinion explained, this theory lacked personal involvement and a causal

---

[3] Again, the Court need not address Count V's claim against Mayor Rockingham in his official capacity because it in duplicative of the *Monell* Claim against the City of North Chicago in Count VI. See *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 691 n. 55 (1978).

[4] The SAC alleges that "Crystal Phillips notified Mayor Rockingham of the excessive and unlawful use of force by the City of North Chicago police officers, including her belief that the behavior of City of North Chicago police officers, including Defendant Officers, was inappropriate and likely to lead to future complaints of excessive and unlawful use of force." *Id.* at ¶ 76. Drawing all reasonable inferences from this ambiguously-worded allegation in favor of Plaintiffs, the Court assumes Phillips told Mayor Rockingham that Bogdala specifically had used excessive force.

connection.  According to the SAC, however, Rockingham knew of the particular officer who injured Plaintiff—Officer Bogdala.  He knew that this officer had a record of excessive force, he knew that the Chief of Police recommended firing him because of this record, and he put a stop to the firing process.  As a result of the mayor's intervention, Officer Bogdala participated in an arrest allegedly involving a constitutional injury to Plaintiff.  This new theory of supervisory liability in the SAC sufficiently alleges that Mayor Rockingham was "personally responsible for the deprivation of the constitutional right."  *Matthews*, 675 F.3d at 708 (7th Cir. 2012).  It alleges that Mayor Rockingham knew about Officer Bogdala's prior misconduct and that he facilitated it, approved it and condoned it by preventing him from being fired.  See *Jones*, 856 F.2d at 992-93 (citations omitted).

Defendants argue that the SAC fails to "substantiate that Mayor Rockingham condoned similar conduct to that which is alleged in the *SAC*."  Mot. to Dismiss at 7.  The SAC alleges that Officer Bogdala caused Plaintiff a constitutional injury by failing to intervene, not by using excessive force himself.  Yet, according to Defendants, the SAC does not provide that Mayor Rockingham had previous knowledge of Officer Bogdala failing to intervene in other incidents.  "Therefore, the Mayor's actions could not have conveyed to Officer Bogdala 'that similar actions would be of no consequence in the future.'"  *Id.* (citing Doc. 37 at 9-10).

First, drawing all reasonable inferences in Plaintiff's favor, the Court infers that, as a practical reality, if Mayor Rockingham approved of Officer Bogdala's prior face-smashing incident with Sharon Jackson, his approval would apply equally (if not more so) to a failure to intervene—an omission being arguably less offensive than an overt act.  Second, Defendant's argument, which cites no supporting case law, misses a point made clear in Seventh Circuit precedent—that an affirmative act of excessive force and a failure to intervene in another officer's use of excessive force both violate § 1983.  "Omissions as well as actions may violate civil rights."

7

*Yang v. Hardin*, 37 F.3d 282, 285 (7th Cir. 1994). "We believe it is clear that one who is given the badge of authority of a police officer may not ignore the duty imposed by his office and fail to stop other officers who summarily punish a third person in his presence or otherwise within his knowledge." *Byrd v. Brishke*, 466 F.2d 6, 11 (7th Cir. 1972). To hold otherwise would insulate non-intervening officers from liability for "reasonably foreseeable consequences of the neglect of their duty to enforce the laws and preserve the peace." *Id.* Defendant's attempt to formalistically limit the scope of Mayor Rockingham's approval to Officer Bogdala's misfeasance, as opposed to nonfeasance, contradicts the thrust of the case law under § 1983. At the pleading stage, Plaintiff has alleged enough factual details to support an inference that, as mayor, Rockingham knew that the law does not distinguish between misfeasance and nonfeasance and that, when he allegedly approved of Officer Bogdala's past § 1983 violations, he effectively condoned future § 1983 violations, regardless of whether those involved misfeasance or nonfeasance.

### B. Qualified Immunity

"Qualified immunity shields government actors from liability for civil damages where their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have been aware." *Hernandez ex rel. Hernandez v. Foster*, 657 F.3d 463, 473 (7th Cir. 2011) (internal quotations and citations omitted). "When making a qualified immunity determination, a court considers (1) whether the plaintiff's allegations show that the defendant violated a constitutional right, and (2) whether that right was 'clearly established' at the time of defendant's conduct." *Id.* (internal quotations and citations omitted).

At issue is the second prong of this analysis. At the time of Plaintiff's alleged injury, it was clearly established that using excessive force to effectuate an arrest violated an arrestee's Fourth Amendment rights. See *e.g., Gonzalez v. City of Elgin*, 578 F.3d 526, 541 (7th Cir. 2009). It also was clearly established that supervisors who approved, condoned, or facilitated a subordinate

officer's use of excessive force violated the arrestee's constitutional rights. See *Jones*, 856 F.2d at 992-9; *Lanigan v. Vill. of E. Hazel Crest, Ill.*, 110 F.3d 467, 477-78 (7th Cir. 1997); *Morfin v. City of E. Chicago*, 349 F.3d 989, 1001 (7th Cir. 2003); *Backes v. Vill. of Peoria Heights, Ill.*, 662 F.3d 866, 869-71 (7th Cir. 2011); *Matthews v. City of E. St. Louis*, 675 F.3d 703, 708-09 (7th Cir. 2012).

Defendant argues that the SAC fails to allege Mayor Rockingham's personal involvement in Plaintiff's injury, rendering liability under *Stoneking v. Bradford Area Sch. Dist.*, 882 F.2d 720 (3d Cir. 1989) the only remaining theory of personal liability under § 1983. Defendants further argue that it was not clearly established whether *Stoneking* applied to an excessive force case in this circuit. The Court need not address this argument, as it finds that the SAC does allege Mayor Rockingham's personal involvement.

**IV.     Conclusion**

For the reasons stated above, Defendants' motion to dismiss [44] Plaintiff's SAC [39] as to Defendant Rockingham is denied.

Dated:  September 30, 2014

_____

Robert M. Dow, Jr.
United States District Judge